1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

DERICK M. J.,                                    Case No.  22-cv-03920-AGT

8
                                Plaintiff,
9                                                **ORDER ON MOTIONS FOR**
          v.                                     **SUMMARY JUDGMENT**
10
                                                 Re: Dkt. Nos. 15, 16
   KILOLO KIJAKAZI,
11
                                Defendant.

12
13        Plaintiff Derick M. J. applied for and was denied supplemental security income (SSI)

14   benefits under Title XVI of the Social Security Act.  Now, on judicial review of the ALJ's

15   decision finding him not disabled and therefore not eligible for benefits, plaintiff argues that the

16   ALJ erred in assessing the medical opinion evidence and in discrediting his symptom testimony.

17   For the reasons explained below, the Court agrees.  Plaintiff's motion for summary judgment is

18   therefore granted, the Commissioner's cross-motion is denied, and this action is remanded for

19   further proceedings.

20        **A.    Background**

21        Plaintiff was born in 1991 and has never held a long-term job.  On January 23, 2017,

22   plaintiff applied for SSI benefits.  AR 176–84.  He alleged disability beginning January 23, 2017.[1]

23   Plaintiff's application was initially denied in March 2017, and again on reconsideration in August

24   2017.  AR 89–94, 101–107.  On July 10, 2018, ALJ Wynne O'Brien-Persons held a hearing.

25   Plaintiff was represented by counsel and testified at the hearing, along with vocational expert

26   Ronald Fleck.  On October 3, 2018, the ALJ determined that plaintiff was not disabled and denied

27

28   [1] Plaintiff's SSI application alleged disability beginning February 11, 2003, but plaintiff amended
     his alleged onset date to January 23, 2017, during the hearing.  AR 10.

United States District Court
Northern District of California

1    his application.  AR 7–24.  After the Appeals Council denied plaintiff's request for review,

2    plaintiff filed an action for judicial review in the Northern District of California.  *See Derick M. J.*

3    *v. Berryhill*, No. 3:19-cv-01374-SK (N.D. Cal. Mar. 14, 2019).  In August 2020, another judge in

4    this district held that the ALJ committed harmful error by apparently rejecting, without providing

5    any stated reasons, the uncontradicted opinion of examining psychologist Melody Samuelson,

6    Psy.D., that plaintiff was moderately impaired in his ability to interact with supervisors and

7    maintain regular attendance in the workplace.  *See* No. 3:19-cv-01374-SK, Dkt. 27 at 7–8.  The

8    court remanded the case to the Social Security Administration with the following instructions:

> On remand, the ALJ shall address Samuelson's opinion that
> Plaintiff's ability to interact with and accept instruction from
> supervisors was moderately impaired.  If the ALJ accepts this
> limitation, the ALJ shall address how these limitations relate to the
> limitation in Plaintiff's RFC [residual functional capacity] to need
> reminders to stay on task. . . .
>
> Additionally, although not raised by Plaintiff, the Court notes that the
> ALJ appears to reject Samuelson's opinion that Plaintiff is moderately
> impaired in his ability to maintain regular attendance in the
> workplace, again, a finding that appears to be uncontradicted by the
> medical evidence in the record.  The ALJ stated that Plaintiff had no
> work history to compare with his attendance but that he was on time
> for both consultative examinations and only occasionally missed
> appointments with one of his treating physicians.  Although the ALJ
> did not explicitly state that he was rejecting this portion of
> Samuelson's opinion, the ALJ did not include any limitation in
> Plaintiff's RFC regarding his ability to maintain regular attendance.
> . . . The ALJ cannot reject Samuelson's opinion based on his lay
> observation that Plaintiff was on time for several appointments.  On
> remand, if the ALJ rejects Samuelson's opinion that Plaintiff is
> moderately impaired in his ability to maintain regular attendance in
> the workplace, the ALJ must provide a reason supported by
> substantial evidence in the record.

22   *Id.* at 8–9 (internal citations omitted).

23       In October 2017, the Appeals Council vacated the ALJ's decision and remanded the case

24   to a second ALJ "for further proceedings consistent with the order of the court."  AR 837.  The

25   Appeals Council further instructed the ALJ to "offer the claimant the opportunity for a hearing,

26   take any further action needed to complete the administrative record and issue a new decision."

27   AR 837.

28       On January 20, 2022, ALJ Serena Hong held a new hearing via telephone, at which

1    plaintiff (again represented by counsel) and vocational expert David Rinehart testified.  AR 806–

2    34.  The ALJ issued a decision on March 24, 2022, concluding that plaintiff "has not been under a

3    disability within the meaning of the Social Security Act since January 23, 2017, the date the

4    application was filed."  AR 782–99.  The ALJ found that plaintiff has numerous severe

5    impairments, including degenerative disc disease to the thoracic spine, hearing loss, bipolar

6    disorder, post-traumatic stress disorder (PTSD), anxiety, attention deficit hyperactivity disorder

7    (ADHD), major depressive disorder, intermittent explosive disorder, and polysubstance abuse.

8    AR 788.  The ALJ then determined that plaintiff had the RFC to perform "light work" with the

9    following limitations:

> [T]he claimant cannot climb ladders, ropes or scaffolds.  He could frequently stoop, crouch, crawl, climb ramp/stairs and kneel.  He must avoid concentrated exposure to hazards such as unprotected heights and moving machinery.  The claimant is capable of simple, routine tasks, occasional public contact, and can work with few changes in his work routine, and perform work that is task oriented and not production pace.

14    AR 791.  Relying on the vocational expert's testimony that an individual with such an RFC

15    could perform jobs existing in significant numbers, including electronics worker, shoe packer,

16    and final assembler, the ALJ concluded that plaintiff is not disabled.  AR 798–99.

17          After the ALJ's decision became final, plaintiff initiated this action for judicial review

18    pursuant to 42 U.S.C. § 405(g).

19          **B.       Legal Standard**

20          Judicial review will disturb an ALJ's decision denying benefits only "if it is not supported

21    by 'substantial evidence or it is based on legal error'" that is not harmless.  *Burch v. Barnhart*, 400

22    F.3d 676, 679 (9th Cir. 2005) (citation omitted).  Substantial evidence means "more than a mere

23    scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might

24    accept as adequate to support a conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

25    2007).  The reviewing court "must consider the entire record as a whole and may not affirm

26    simply by isolating a 'specific quantum of supporting evidence.'"  *Orn v. Astrue*, 495 F.3d 625,

27    630 (9th Cir. 2007) (citation omitted).  "The ALJ is responsible for determining credibility,

28    resolving conflicts in medical testimony, and for resolving ambiguities," so when "the evidence

United States District Court
Northern District of California

1  can reasonably support either affirming or reversing a decision, [the court] may not substitute [its]

2  judgment for that of the ALJ." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)

3  (simplified).  "Finally, the court will not reverse an ALJ's decision for harmless error, which

4  exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate

5  nondisability determination.'"  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

6  (citation omitted).

7          **C.      Discussion**

8          Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is

9  based on non-harmless legal error.  Specifically, plaintiff contends that the ALJ (1) improperly

10  rejected the opinion of the psychological consultative examiner, Dr. Samuelson, regarding

11  plaintiff's moderate mental limitations, (2) improperly discredited plaintiff's testimony regarding

12  his mental impairments, and (3) failed to include all of plaintiff's mental limitations in the RFC

13  and the resulting hypothetical posed to the vocational expert.

14          **1.      Dr. Samuelson's Opinion**

15          Plaintiff first argues that the ALJ erred in partially rejecting the uncontradicted opinion of

16  examining psychologist Dr. Samuelson.  "To reject the uncontradicted opinion of a treating or

17  examining doctor, an ALJ must state clear and convincing reasons that are supported by

18  substantial evidence."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)

19  (simplified).  "If a treating or examining doctor's opinion is contradicted by another doctor's

20  opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

21  by substantial evidence."  *Id.*  To satisfy the "substantial evidence" requirement, an ALJ must set

22  out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

23  interpretation thereof, and making findings."  *Garrison*, 759 F.3d at 1012 (citation omitted).

24          Dr. Samuelson conducted a psychological consultative examination of plaintiff and issued

25  a report on March 17, 2017.  AR 376–82.  Dr. Samuelson noted that plaintiff "presented as

26  inattentive with a liable mood, depression and distractibility" and that he "appeared to put forth

27  [his] best effort and was cooperative" but "questions had to be repeated due to poor attention" and

28  "unstable emotions."  AR 379–80.  Dr. Samuelson further noted that plaintiff "has a long history

4

of trauma from severe physical [and sexual] abuse" by family members, and his psychiatric records reflected a history of multiple suicide attempts, problems with manic episodes with suicidality, and PTSD and sobriety of two years. AR 376–77. Plaintiff reported six psychiatric hospitalizations for suicide attempts by hanging, overdose, and cutting. AR 377.

Dr. Samuelson diagnosed plaintiff with bipolar disorder, ADHD, PTSD, learning disorder not otherwise specified, alcohol and methamphetamine dependence in remission, AR 380, and opined that he would have "moderate difficulty" performing complex and detailed tasks, interacting with the public, working with supervisors and co-workers, and maintaining attention, concentration, persistence, and pace, AR 381. Dr. Samuelson also opined that plaintiff was "moderately impaired" in his ability to accept instruction from supervisors, maintain regular attendance in the workplace, perform work activities without special or additional supervision, and associate with day-to-day work activity, including attendance. AR 381–82. Notably, both state agency psychological consultants who subsequently reviewed plaintiff's file and issued mental residual functional capacity reports—Dr. Regan on March 24, 2017, and Dr. Mateus on May 30, 2017—likewise found that plaintiff was "moderately limited" in his ability to, among other things, accept instructions and criticism from supervisors, maintain regular attendance and perform activities within a schedule, maintain attention and concentration for extended periods. AR 66–67, 83–84. As plaintiff correctly observes, Dr. Samuelson's opinion is uncontradicted as to those moderate limitations.

The ALJ summarized Dr. Samuelson's opinion and then discounted it as follows:

> The undersigned gives partial weight to the opinion of the examiner as generally consistent with moderate limitations and the mental residual functional capacity. However, the limitations on attendance are speculative, and inconsistent with the treatment records, and the limitations on work around coworkers and supervisors is overly restrictive and inconsistent with records noting the claimant was cooperative, with generally normal mood and affect, and normal behavior. The findings that the claimant's ability to maintain regular attendance in the workplace and perform activities on a consistent basis was moderately impaired and his ability to perform activities without special or additional supervision was also moderately impaired as inconsistent with the examiner's findings on examination, including that he was on time for the examination, was able to drive himself to the examination, was capable of handling his own personal care, and managing his money. Furthermore, the claimant requested

5

> from his provider a letter for the court indicating attendance to appointments and adherence to medications (22F/11). Additionally, the claimant completed a disability report indicating he was capable of personal care and simple daily tasks, as discussed above (see 4E), and the treatment notes indicate generally normal mental status examinations, with coherent thought process and normal thought content and appropriate mood and affect (22F/22, 27, 29, 31). He does not require extra supervision[.] . . . . [T]he consultative examiner's opinion finding of moderate difficulty working with supervisors and coworkers, and that his ability to accept instruction from supervisors was moderately impaired is not supported by the examiner's own findings that he appeared to put forth his best effort and was cooperative at the examination, or the record as a whole.

AR 796–97. Plaintiff argues that none of these reasons is a clear and convincing—or even a specific and legitimate—reason to reject Dr. Samuelson's assessment of moderate limitations on (1) maintaining attention and concentration, (2) maintaining regular attendance, and (3) interacting with supervisors. The Court agrees.

As an initial matter, the ALJ appears to have accepted only the portions of Dr. Samuelson's opinion that were "generally consistent with moderate limitations and the mental residual functional capacity" that the ALJ found and assigned. AR 796. This was error. "The ALJ is charged with evaluating the medical evidence and then using that to determine the RFC, not the other way around." *Norman v. Berryhill*, 2018 WL 4519952, at *13 (N.D. Cal. Sept. 19, 2018); *cf. Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) ("The ALJ took a backward approach to determining [the claimant's] credibility. . . . To determine the RFC first and then assess the claimant's testimony is to 'put the cart before the horse.'") (simplified).

Regarding Dr. Samuelson's opinion that plaintiff is moderately limited in his ability to maintain attention and concentration, it is not entirely clear whether the ALJ actually rejected that limitation. Because the ALJ failed to specifically discuss that limitation, the record is insufficient for the Court to determine whether it was silently subsumed in the RFC's limitation to simple routine work or erroneously left out.

With respect to attendance, the ALJ's conclusory assertion that "the limitations on attendance are speculative, and inconsistent with the treatment records" lacks the specificity required to reject an examining psychologist's uncontradicted opinion. Indeed, it is unclear which treatment records the ALJ is referring to, or how those unidentified records are inconsistent with

United States District Court
Northern District of California

1   Dr. Samuelson's opinion that plaintiff's ability to maintain regular attendance is moderately

2   impaired.  To the extent the ALJ relied on the fact that plaintiff "was on time for the examination"

3   with Dr. Samuelson, the prior remand order explicitly advised that the "ALJ cannot reject

4   Samuelson's opinion based on his lay observation that Plaintiff was on time for several

5   appointments."  *See* No. 3:19-cv-01374-SK, Dkt. 27 at 8–9.  Likewise, to the extent the ALJ relied

6   on the fact that plaintiff "requested from his provider a letter for the court indicating attendance to

7   appointments and adherence to medications," the ALJ failed to explain how making such a request

8   has any bearing on plaintiff's ability to maintain regular attendance in the workplace.[2]

9          The ALJ's reasons for rejecting Dr. Samuelson's assessment of moderate limitations on

10   working with and accepting instructions from supervisors fare no better.  The ALJ found those

11   limitations to be "overly restrictive and inconsistent with records noting the claimant was

12   cooperative, with generally normal mood and affect, and normal behavior" and "not supported by

13   [Dr. Samuelson's] own findings that [plaintiff] appeared to put forth his best effort and was

14   cooperative at the examination."  AR 796–97.  But plaintiff's ability to be cooperative with his

15   medical providers is not inconsistent with Dr. Samuelson's opinion regarding supervisor

16   interactions.  As another court has explained,

17          the fact that a claimant manages to be cooperative with her healthcare
              providers does not contradict those providers' opinions that the
18          claimant is severely [or moderately] limited in her ability to interact
              with coworkers, supervisors, or the general public.  Plaintiff's
19          healthcare providers are professionals trained to deal with mentally

20

21   _____

     [2] The Court also notes that numerous records from plaintiff's physicians and mental health
22   providers reflect that plaintiff has continuously struggled with remembering and attending
     appointments.  *See, e.g.*, AR 679 (March 19, 2018, behavioral health progress note reporting that
23   plaintiff "had no recollection that he missed an appointment with Dr. Debbold last week"); AR
     673 (May 1, 2018, progress note reporting that plaintiff "wasn't aware that he had missed his last
24   three appointments"); AR 1538 (no show for February 27, 2019, psychiatry appointment); AR
     1540 (April 4, 2019, progress note reporting that plaintiff "has poor memory in general" and he
25   "apologized for missing the last appt and stated, 'I need reminders on a daily basis'"); AR 1549
     (no show for January 14, 2020, psychiatry appointment); AR 1553 (no show for April 1, 2020,
26   telepsychiatry appointment); AR 1556 (no show for May 6, 2020, telepsychiatry appointment);
     AR 1565 (no show for December 23, 2020, telepsychiatry appointment; "Last contact 9/30.  No
27   answer; message left to call clinic to reschedule"); AR 1568 (January 2020 annual reassessment
     noting that plaintiff "has been unable to refill his prescriptions being that he missed his last MD
28   apt and needs to show up for apt before additional meds are prescribed"); AR 1567 (January 20,
     2021, progress note reporting that plaintiff "has missed appointments" and has "not obtained lab
     work").

and physically ill or disabled patients.  Furthermore, a medical treatment relationship is not like the relationship a worker has with her coworkers, supervisors, or the general public.  The goals and nature of interacting with healthcare providers is different. . . . Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting.

*Tina R. v. Comm'r of Soc. Sec.*, 2019 WL 1417301, at *5 (W.D. Wash. Mar. 29, 2019) (citation omitted).  Indeed, numerous courts have recognized that "a claimant's ability to cooperate with healthcare providers is not necessarily indicative of the severity of her mental impairments."  *L.M. v. Kijakazi*, 2023 WL 6308073, at *13 (N.D. Cal. Sept. 27, 2023); *see T.N. v. Kijakazi*, 2021 WL 4553581, at *9 (N.D. Cal. Oct. 5, 2021) ("The fact that Plaintiff was alert does not mean that Plaintiff does not have significant cognitive impairments. Nor does the fact that, in a structured clinical environment, with a trained mental health professional, Plaintiff was able to make good eye contact, was cooperative, and put forth adequate effort on testing mean that Plaintiff would be able to interact appropriately with coworkers and supervisors in the entirely different context of a full-time mandatory work environment."); *Michael F. v. Kijakazi*, 2021 WL 4473176, at *7 (S.D. Cal. Sept. 30, 2021) ("Plaintiff's ability to be pleasant or cooperative with medical personnel who are providing him with treatment does not mean, however, that Plaintiff would have the same ability to be pleasant or cooperative with supervisors, co-workers, or customers in the workplace.").[3]

Similarly, as to the ALJ's reliance on "generally normal mental status examinations, with coherent thought process and normal thought content and appropriate mood and affect (22F/22, 27, 29, 31)," the Court notes that two of the four records the ALJ cited as support—specifically, the progress notes from Sonoma County Behavioral Health (SCBH) dated April 2020 (22F/22) and July 2020 (22F/27)—reported "ongoing mood instability with periodic impulse dyscontrol,"

---

[3] The Court also finds it troublesome that the ALJ found Dr. Samuelson's assessed limitations less persuasive because plaintiff put forth his best effort during the examination.  "If this were a valid basis to find a doctor's opinions unpersuasive, claimants with mental impairments would be put in a no-win situation: put forth adequate effort on [examination] and the doctor's opinions are unpersuasive because the claimant is capable of putting forth effort, or don't put forth adequate effort and the doctor's opinions are unpersuasive because the claimant was malingering during [examination]." *T.N.*, 2021 WL 4553581, at *9 n.7.

and described plaintiff's mood as "dysphoric" and his affect as "restricted" and "irritable, depressed." AR 1554, 1559. Numerous other SCBH progress notes from 2020 and 2021 also describe plaintiff varyingly as tearful, highly distractable, rambling, depressed, agitated, fearful, liable, anxious, angry, and hostile. *See, e.g.*, AR 1536, 1541, 1546, 1550, 1557, 1567. The ALJ did not meaningfully address many of those records other than to note that there were "some periods of abnormal findings primarily due to life stressors, including substance abuse and issues with law enforcement, and altercations while homeless." AR 797. *See Kimberley S. v. Comm'r of Soc. Sec.*, 2020 WL 5749017, at *8 (N.D. Cal. Sept. 25, 2020) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted). To that end, the Court notes that the ALJ also failed to address the two comprehensive mental health assessments completed by plaintiff's psychiatric providers at SCBH in January 2019 and January 2020. *See* AR 1015–24 ("Initial Adult Assessment" dated January 18, 2019); AR 1568–72 (Annual Reassessment of Adult Needs and Strengths dated January 7, 2020). Both assessments diagnosed plaintiff with chronic PTSD, unspecified psychosis, intermittent explosive disorder, and cannabis use disorder, and documented a range of psychiatric symptoms including anxiety, depression, impulse control, interpersonal problems, dissociative episodes of anger and aggression, problems with concentration, and sleep disturbance. AR 1016, 1021, 1024, 1568, 1571–72.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). And while an ALJ "need not discuss all evidence presented," she must "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (simplified). The January 2019 Initial Adult Assessment, which consisted of an extensive interview and mental status examination, indicated that plaintiff was oriented, alert, and hypervigilant ("checking windows of writer's office often"); his ability to follow was clear but his thought processes were rambling, circumstantial, and tangential ("client's thoughts wandered all over the place" and "he was difficult to redirect"); his mood was expansive and his affect was elevated, tearful, anxious, and irritable; and his judgment and insight were poor. AR 1020. The assessment noted that

plaintiff "is homeless currently due to violent behavior towards [his girlfriend] and her mother" and that he was seeking mental health treatment at SCBH to, in his own words, "get these episodes under control.  I gotta get my ADHD under control.  I hear voices all the time.  So I got to take my Abilify too.  I need to get this mind stabilized to where I'm not freaking out on anyone."  AR 1016.  The assessment reported that plaintiff experienced "extensive and early sexual abuse by cousins" and "ongoing physical abuse from stepfather" and noted that plaintiff "responds to authority with paranoia and distrust" and "anger/irritability."  AR 1020–21.  The assessment found that plaintiff "would benefit from psychiatric and RN support as needed to continue to stabilize his psychiatric symptoms" and noted that those "symptoms cause impairments to his individual and social functioning, have prevented [plaintiff] from working, resulted in past hospitalization and legal history."  AR 1024.  The January 2020 Annual Reassessment similarly indicated that plaintiff's psychiatric symptoms were continuing to "severely impair[] [plaintiff's] life domains of: physical/medical; family; employment; social functioning; recreational; residential stability; legal; sleep; self-care; decision-making; involvement in recovery and risk of being exploited."  AR 1572.  The reassessment further noted that plaintiff "has had multiple contacts with [SCBH's] whole person care team" and "is working with the psychiatric team and was prescribed medication to help with symptoms of posttraumatic stress disorder and intermittent explosive disorder" but he "remains vulnerable and in need of continued mental health treatment."  AR 1571.  The ALJ's failure to address these highly relevant assessments—which detail plaintiff's ongoing mental health struggles—was error.

### 2.     Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ erred by discrediting his testimony about his mental health symptoms—specifically, his testimony describing his difficulties with supervisors, concentration and attention, and attendance and punctuality.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (citation

1    omitted).  Second, if the claimant meets the first step and "there is no evidence of malingering, the

2    ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

3    specific, clear and convincing reasons for doing so."  *Id.* at 1112 (citation omitted).

4         Here, the ALJ concluded that plaintiff's "medically determinable impairments could

5    reasonably be expected to cause the alleged symptoms" and identified no evidence of malingering.

6    AR 794.  Thus, the ALJ could reject plaintiff's testimony about the "severity of his symptoms

7    only by offering specific, clear and convincing reasons for doing so."  *Smith*, 14 F.4th at 1112

8    (internal alterations omitted).  "This is not an easy requirement to meet: 'The clear and convincing

9    standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015

10   (citation omitted).  To ensure meaningful review, the ALJ must "specify which testimony she

11   finds not credible, and then provide clear and convincing reasons, supported by evidence in the

12   record, to support that credibility determination."  *Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*

13   *v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)).  That is, the ALJ must "link that testimony to the

14   particular parts of the record supporting her non-credibility determination."  *Brown-Hunter*, 806

15   F.3d at 494.  "Failure to identify the specific testimony that is not credible is legal error."  *S.L. v.*

16   *Kijakazi*, 2021 WL 5415263, at *6 (N.D. Cal. Nov. 19, 2021).

17        In assessing plaintiff's credibility, the ALJ found that his "statements concerning the

18   intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the

19   medical evidence and other evidence in the record for the reasons explained in this decision."

20   AR 794.  The ALJ went on to state:

21            As for the claimant's statements about the intensity, persistence, and
             limiting effects of his symptoms, they are inconsistent because the
22           record shows substance abuse continues to be an issue for the
             claimant which affects his overall activities of daily living.  He has
23           reported trying to find work (22F/27-28).  He reported he cannot lift
             over 120 pounds ("100 max") and could walk 2 to 5 minutes before
24           needing to rest (4E/11).  He has reported some work activity
             throughout the period at issue (testimony; 22F/18-19).  For example,
25           the claimant reported working for a landscaping company (22F/18-
             19).  He was able to advocate for himself asking his provider for a
26           letter to the court indicating attendance to appointments and
             medication compliance (22F/11).  He reported helping out at the
27           church he stayed at and continued to have a relationship with his
             girlfriend or "estranged wife" (22F/39).  The claimant's activities are
28           consistent with at least a range of light unskilled work.

United States District Court
Northern District of California

1    AR 794.  Plaintiff argues that these are not "clear and convincing reasons" for discrediting his

2    testimony regarding his mental impairments.  The Court again agrees.

3          Critically, the ALJ "failed to identify specifically which of [plaintiff's] statements she

4    found not credible and why." *Brown-Hunter*, 806 F.3d at 493.  This alone is grounds for reversal.

5    *Id.* at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons

6    for rejecting Brown–Hunter's [symptom] testimony where, as here, the ALJ never identified

7    *which* testimony she found not credible, and never explained *which* evidence contradicted that

8    testimony.").  Moreover, the ALJ's finding that "the record shows substance abuse continues to be

9    an issue for [plaintiff] which affects his overall activities of daily living," is expressly contradicted

10   by the ALJ's finding earlier in her decision that "substance abuse is not material to the finding of

11   disability as [plaintiff's] functioning does not appear to have substantially changed with or without

12   substance abuse."  AR 788.  And with respect to plaintiff's prior work for a landscaping company,

13   plaintiff clearly testified that he was fired within the first three months due to conflicts with his

14   supervisor.  AR 814–15, 817–18.  "It does not follow from the fact that a claimant tried to work

15   for a short period of time and, because of his impairments, *failed*, that he did not then experience

16   [symptoms] and limitations severe enough to preclude him from *maintaining* substantial gainful

17   employment." *Lingenfelter*, 504 F.3d at 1038.

18          **3.      Remaining Issues**

19          Plaintiff's remaining contention—namely, that the ALJ erred by failing to include all of his

20   mental limitations in the RFC and the resulting hypothetical posed to the vocational expert—is

21   derivative of his first two arguments that the ALJ erred both in rejecting Dr. Samuelson's opinion

22   and in discrediting plaintiff's symptom testimony.  As explained above, the Court agrees that the

23   ALJ erred on both counts.  The ALJ improperly evaluated plaintiff's RFC because of those errors,

24   and that misstep affects the determinations based on the RFC. *See Robbins v. Soc. Sec. Admin.*,

25   466 F.3d 880, 883 (9th Cir. 2006) ("[A]n RFC that fails to take into account a claimant's

26   limitations is defective."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.

27   2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must

28   set out all the limitations and restrictions of the particular claimant.'") (citation omitted).

United States District Court
Northern District of California

**D.     Remand**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits.  "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citation omitted).  However, the Court may remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels*, 874 F.3d at 668 (citation omitted).  It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.  And even when all three credit-as-true factors are satisfied, "it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Id.* at 1045.

The Court finds that the normal course of remanding for further proceedings is appropriate in this case.  Although the ALJ erred both in rejecting Dr. Samuelson's opinion and in discrediting plaintiff's symptom testimony, there are still outstanding issues that must be resolved before a determination of disability can be made.  Even if Dr. Samuelson's opinion and plaintiff's symptom testimony were fully credited, it is not clear to the Court that a determination of disability would result.[4]  *See Leon*, 880 F.3d at 1047 ("When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary.").  On remand, the ALJ must rectify the errors addressed

---

[4] Plaintiff argues that remanding for an award of benefits is appropriate based on the vocational expert's responses to hypothetical questions posed by plaintiff's counsel at the hearing.  *See* Dkt. 15 at 27.  But the formulation of those hypotheticals required translating the moderate limitations assessed by Dr. Samuelson into vocational terms and it is not clear that plaintiff's counsel's translation of those limitations is correct or the only reasonable translation.  Accordingly, remanding for the ALJ to translate the assessed limitations into an RFC in the first instance is appropriate.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

United States District Court
Northern District of California

1    above.

2                                         * * *

3            Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion

4    is denied.  This case is remanded to the Commissioner for further proceedings consistent with this

5    order.

6            **IT IS SO ORDERED.**

7    Dated: October 3, 2023

8

9    _____

10   ALEX G. TSE
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

14